IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

WILLIE CHESTER HARRIS PLAINTIFF

v. CIVIL ACTION NO. 3:26-CV-162-SA-RP

PRINCIPLE MISSISSIPPI LTD d/b/a PRINCIPLE TOYOTA
OF HERNANDO and SANTANDER CONSUMER USA, INC. DEFENDANTS

ORDER AND MEMORANDUM OPINION

On May 18, 2026, Willie Chester Harris, who is proceeding *pro se*, initiated this litigation by filing his Complaint for Damages, Rescission of Contract, and Declaratory and Injunctive Relief [3] in the County Court of Desoto County, Mississippi. The lawsuit stems from Harris' purchase of a used pickup truck and his subsequent alleged failure to make timely payments under the loan agreement he signed.

On June 15, 2026, Santander timely removed the case to this Court. After Principle and Santander filed Motions to Compel Arbitration [7, 11], Harris filed a Motion to Strike Arbitration Clause [12] and then an Amended Complaint [13]. Santander then filed a renewed Motion to Compel Arbitration [20].

Having reviewed the various filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Background*

At the outset, the Court notes that Harris' allegations leave much to be desired in terms of clarity. Nonetheless, the Court, recognizing Harris' *pro se* status, has endeavored to parse through the allegations and construe them in his favor.

On February 20, 2026, Harris purchased a used 2018 Dodge Ram 1500 pickup truck from Principle at its Hernando, Mississippi location. The purchase price for the vehicle was $22,317.05.

Harris made a $4,000 down payment and financed the balance. He executed a Retail Installment Sale Contract (the "RISC") with Principle that day. Pursuant to the RISC, Harris was to make 72 monthly payments of $592.26 in exchange for a security interest in the vehicle. Among other terms, the RISC contained an arbitration provision which in pertinent part provides:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

[20], Ex. 1 at p. 9.

The same day Harris executed the RISC, Principle executed an Assignment and Assumption Agreement, pursuant to which it assigned its rights to Santander. That Agreement provides that Principle "sells, assigns, transfers and conveys to [Santander], and its successors and assigns, all of [Principle's] right, title and interest in, to and under the Contract and . . . all liens and security interests in and to the Vehicle securing the Retail Contract[.]" [20], Ex. 1 at p. 12.

Harris alleges that less than two weeks later, on March 2, 2026, he served on the Defendants a "Notice of Rescission and Affidavit of Truth" via certified mail. [13] at p. 8. He seemingly contends that service of this document placed an obligation on the Defendants to take some action, as he alleges that "[b]oth Defendants are in statutory default." *Id.* at p. 9. He further alleges that "[t]here is no valid contract, no valid arbitration clause, and no valid debt." *Id.*

While Harris never explicitly states as much in his Amended Complaint [13], Santander asserts that he is in default on the payments due under the RISC and presumably has engaged in some collection efforts that prompted this litigation. However, as noted previously, Harris takes

the position that the RISC, as a whole, is invalid. Harris' Amended Complaint [13] against Principle and Santander contains a myriad of claims, including alleged violations of the Truth in Lending Act ("TILA"), certain Federal Regulations, Mississippi statutory law, and the Fair Debt Collection Practices Act, among other things. In addition to requesting damages in an amount in excess of $100,000, Harris seeks injunctive relief and goes so far as to request that the Court refer the Defendants to the United States Attorneys Office for possible criminal prosecution.

Principle and Santander now request that the Court compel Harris' claims to arbitration pursuant to the arbitration provision contained in the RISC. *See* [7, 11, 20]. Harris opposes their requests and has filed his own Motion to Strike Arbitration Clause [12], wherein he contends that the arbitration provision is void.

*Standard*

The Federal Arbitration Act ("FAA") expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Long v. Allianz Life Ins. Co. v. North America*, 2008 WL 2910579, at *1 (N.D. Miss. July 25, 2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10, 105 S. Ct. 852, 79 L. Ed. 2d 1 (1983); *Mouton v. Metro. Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998)).

"Under the FAA, courts conduct a two-prong arbitration inquiry, determining first, whether the parties intended to arbitrate the dispute, and second, if they did intend to arbitrate, whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Begole v. North Miss. Med. Ctr., Inc.*, 2018 WL 1463355, at *1 (N.D. Miss. Mar. 23, 2018) (citations and quotation marks omitted); *see also Long*, 2008 WL 2910579 at *1 ("The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute.").

First, "the court must determine whether the parties agreed to arbitrate the dispute." *Long*, 2008 WL 2910579 at *1 (citing *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001)). Under this first prong, "the court must determine whether a valid agreement to arbitrate exists, and whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (citing *OPE*, 258 F.3d at 445; *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998)); *see also Reed v. Johnson*, 2016 WL 913232, at *2 (N.D. Miss. Mar. 9, 2016). Notably, "[t]hese issues are controlled by 'ordinary state-law principles that govern the formation of contracts.'" *Reed*, 2016 WL 913232 at *2 (quoting *Graves v. BP America Inc.*, 568 F.3d 221, 222 (5th Cir. 2009)).

Next, "[i]f the court finds that the parties agreed to arbitrate the claims, it must then consider whether any federal statute or policy renders the claims nonarbitrable. In conjunction with this inquiry, a party seeking to avoid arbitration must allege and prove that the arbitration provision itself was a product of fraud or coercion; alternatively, that party can allege and prove that another ground exists at law or in equity that would allow the parties' contract or agreement to be revoked." *Id.* (citing *OPE*, 258 F.3d at 446; *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 680-81 (5th Cir. 1976)).

*Analysis*

Harris makes numerous arguments against enforcement of the arbitration provision, spanning from the entire RISC being invalid, to Santander not being a signatory to it, to Harris himself not being provided the loan documents prior to signing them, among other things. The Court recognizes these arguments and will walk through them in the context of the two prongs that govern this analysis.

*I. First Prong*

Under the first prong, the Court must look to the following sub-prongs: (1) whether a valid agreement to arbitrate exists; and (2) if so, whether the dispute falls within that agreement. *See Reed*, 2016 WL 913232 at *2.

*A. Whether a valid agreement to arbitrate exists*

As noted previously, the arbitration provision is contained within the RISC, which is a contract between Harris and Principle. In his Motion to Strike [12], Harris makes the argument that he "had no opportunity to read, review, or be bound by any arbitration clause embedded in documents he was never permitted to retain" and asserts that Principle's conduct somehow ran afoul of "15 U.S.C. § 1638(b) and the E-SIGN Act, 15 U.S.C. § 7001(c)." [12] at p. 2.

Other than this passing reference, Harris provides no factual explanation as to how he signed the RISC yet was not permitted to review it. And Mississippi law is clear that "a person 'is charged with knowing the contents of any document that he executes.'" *Long,* 2008 WL 2910579 at *2 (quoting *Russell v. Performance Toyota, Inc.*, 826 So.2d 719, 726 (Miss. 2002)). Setting aside that well-settled principle of Mississippi law, Harris' reliance on the two cited federal statutory provisions is misplaced. He cites 15 U.S.C. § 1638(b), which pertains to the form and timing of required disclosures for residential mortgage transactions. He also points to 15 U.S.C. § 7001, which addresses the use of electronic records for required lending disclosures. In short, those statutory provisions are wholly inapplicable.

Ultimately, Harris' general reference to inapplicable statutory provisions is insufficient. The reality is that the Court has nothing before it that indicates Harris did not execute the RISC (he does not appear to contest that he did in fact execute it) and, by operation of Mississippi law, he is responsible for knowing its contents. *See Long*, 2008 WL 2910579 at *2.

There is seemingly no dispute that an arbitration provision was contained within the RISC. This makes sense considering that the provision was listed on its own page containing the words "ARBITRATION PROVISION" at the top. [20], Ex. 1 at p. 9.

But Harris attacks the provision's validity on a different ground—specifically, he contends that Santander cannot enforce the provision because it is not a signatory to the RISC. While true that Santander was not originally a party to the RISC, Principle subsequently executed an Assignment and Assumption Agreement, pursuant to which it assigned to Santander its rights under the RISC. *See* [20], Ex. 1 at p. 12. Thus, despite not originally being a party to the RISC, Santander acquired Principle's rights thereunder by virtue of the Assignment and Assumption Agreement. The Mississippi Supreme Court has recognized that an assignment may be enforced by an assignee, "who essentially 'stands in the shoes' of the assignor [], taking whatever rights the assignor possessed." *S. Miss. Planning and Dev. Dist. v. Alfa Gen. Ins. Corp.*, 790 So.2d 818, 821 (Miss. 2001) (quoting *Great S. Nat'l Bank v. McCullough Envtl. Servs., Inc.*, 595 So.2d 1282, 1286 (Miss. 1992)). That is precisely what Santander seeks to do here.

As an additional point, the Court notes that the arbitration provision specifically provides that "[t]his Arbitration Provision shall survive any termination, payoff *or transfer of this contract*." [20], Ex. 1 at p. 9 (emphasis added). Thus, the document that Harris signed—the RISC—explicitly provides that it will still apply even if a party transfers its rights. Harris' effort to prevent Santander from enforcing the arbitration provision on this basis is rejected.

Next, Harris attempts to undercut the validity of the arbitration provision by asserting that "two conflicting arbitration clauses exist in the transaction documents." [31] at p. 3. As noted *ad nauseam* herein, the RISC contains an arbitration provision, which is on its own page that clearly states "ARBITRATION PROVISION" at the top of the page. [20], Ex. 1 at p. 9. As part of the

purchase of the vehicle, Harris also executed what the parties refer to as a "Buyer's Order." This document was executed the same day and provides general information about the vehicle and the terms of the sale on the first page and then includes a list of 18 additional terms on the second page. Harris emphasizes it because it too contains an "Agreement to Arbitrate" section. *See* [20], Ex. 1 at p. 10. He argues that the two arbitration clauses are inconsistent and, as a result, void.

Like Harris' other arguments, this too falls flat. First, as Santander points out, it assumed the RISC—not the Buyer's Order—by virtue of the Assignment and Assumption Agreement. Santander is not attempting to enforce the arbitration provision within the Buyer's Order (nor could it as a non-party thereto).[1] In addition, even if Santander was attempting to enforce the Buyer's Order, Harris has not pointed to any authority to indicate that the same would be unenforceable simply because more than one arbitration agreement exists. This would instead be an issue of contract interpretation as to which provision controlled—it would not void both provisions. *See, e.g.*, *Hackman v. WWEC Holdings III, Corp.*, 2026 WL 2172468, at *7 (N.D. Miss. July 28, 2026) (interpreting and enforcing contract that contained two separate forum selection provisions).

As a final argument against the existence of a valid agreement to arbitrate, Harris contends that because he sent a rescission notice to the Defendants after executing the documents, the RISC was rescinded and ultimately became void by operation of federal law, specifically arguing:

> On or about March 2, 2026, Plaintiff served a formal Notice of Rescission on both Defendants pursuant to 15 U.S.C. § 1635(a) and Regulation Z, 12 C.F.R. § 1026.23. Neither Defendant responded within the mandatory 20-day statutory response period. Plaintiff served a second rescission notice and a third notice of default. Neither Defendant responded to any notice. The RISC became void by operation of federal law upon expiration of the 20-day response window on March 25, 2026, more than two months before Santander filed this motion to compel arbitration under the very contract it had already refused to honor.

[1] The Buyer's Order states that it incorporates the RISC, among other documents, but the RISC does not incorporate the Buyer's Order.

[31] at p. 3-4.

Thus, Harris seemingly takes the position that he unilaterally rescinded the RISC when he sent a notice of rescission to the Defendants and they failed to take certain actions. Therefore, according to Harris, there is no valid arbitration provision. This argument can be quickly disposed of, as numerous courts across the country have held that the provisions of the TILA on which Harris relies do not apply to contracts for the purchase of vehicles. *See*, *e.g.*, *Rollins v. Premier Motorcar Gallery, Inc.*, 2025 WL 2166019, at *6 (N.D. Fla. July 15, 2025), report and recommendation adopted at 2025 WL 2161428 (N.D. Fla. July 30, 2025) ("The TILA right to rescind does not extend to auto loans."); *Tedonzong v. Public Employee Fed. Credit Union*, 2023 WL 7492197, at *4 (N.D. Ga. Oct. 6, 2023) ("TILA's right of rescission does not apply to car loans."). In short, Harris' attempted rescission was ineffective and simply has no impact on the validity of the RISC.

Ultimately, each of Harris' arguments against the validity of the arbitration provision fall woefully short. A valid agreement to arbitrate exists. The first sub-prong is satisfied.

*B. Whether the dispute falls within the arbitration provision*

The second sub-prong concerns whether the parties' dispute falls within the parameters of the agreed-upon arbitration provision. *See Reed*, 2016 WL 913232 at *2. To analyze this point, the Court reverts, as it must, to the language of the arbitration provision itself which in pertinent part provides:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship

> (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

[20], Ex. 1 at p. 9.

This language is extremely broad, encompassing not only the original RISC but also "any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)[.]" *Id*.

In his Response [31], Harris argues that his federal statutory claims are carved out by the express language of the arbitration provision. In particular, Harris clings to the portion of the provision stating that "[i]f federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute." [20], Ex. 1 at p. 9.

The problem with Harris' argument on this point is that he has not pointed to any statutory basis in federal law to indicate that any of his claims are exempted from a binding arbitration agreement. Instead, as with many of his other contentions, he passingly raises this argument but provides nothing to substantiate it.

Despite Harris' conclusory assertion, the Court finds that the expansive language of the arbitration provision clearly encompasses the claims in Harris' Amended Complaint [13]. Thus, the second sub-prong is satisfied.

*II. Second Prong*

Under the second prong of the analysis, the Court must "assess whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *OPE*, 258 F.3d at 446 (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996)) (additional citations and quotation marks omitted). At this juncture, courts customarily consider arguments such as fraud, duress, and unconscionability. *See*, *e.g.*, *E. Ford, Inc. v. Taylor*, 826 So.2d 709, 713 (Miss.

2002); *Doctor Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)).

Although Harris' arguments are at times difficult to follow, he apparently raises no such defenses here. Rather, his arguments against enforcement are seemingly subsumed by his arguments regarding rescission that the Court has previously rejected. The Court sees no need to again recite its conclusion on those points.

The Court has nothing before it to indicate the existence of any external legal constraints that would foreclose arbitration of Harris' claims. Instead, these claims are precisely the type and nature of claims that Harris agreed to arbitrate.

*III. Additional Matters*

The Court is aware of Harris' *pro se* status and has tried to extend him leniency in construing his arguments. To the extent that the Court failed to address any particular argument he raised, it would not have changed the outcome. The simple reality is that Harris executed a contract that clearly contains an enforceable arbitration provision that this Court must enforce. *See Ramsey v. Indep. Spec. Ins. Co.*, 686 F. Supp. 3d 470, 474 (E.D. La. 2023) (quoting *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prod. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001) ("The Federal Arbitration Act . . . establishes a liberal policy favoring arbitration and a strong federal policy in favor of enforcing arbitration agreements.") (additional citation and internal quotation marks omitted).

*Conclusion*

This case is due to be compelled to arbitration. The Motions to Compel [7, 20] are hereby GRANTED. The previously-filed Motion to Compel [11] and the Motion to Strike [12] are TERMINATED.

This case is STAYED pending resolution of the arbitration proceedings. The parties are ORDERED to file quarterly status reports updating this Court on the status of the arbitration proceedings with the first report being due on January 1, 2027 and continuing to be due every quarter until the matter is resolved.

SO ORDERED this the 6th day of November, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE